UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL F.G.,[1]<br>    Plaintiff<br>v.<br>ANDREW M. SAUL, Commissioner of Social Security,[2],<br>    Defendant. | Case No. 8:18-cv-01082-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff Raul F.G. filed a complaint seeking review of the decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 8 and 19] and briefs addressing disputed issues in the case [Dkt.13 ("Pl. Br."), Dkt. 18 ("Def. Br."), Dkt. 21 ("Pl. Reply")]. The matter is now ready for decision. For the reasons discussed below, the Court

---

[1]     In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party.

[2]     Andrew M. Saul, now Commissioner of the Social Security Administration, is substituted as defendant for Nancy A. Berryhill. *See* Fed. R. Civ. P. 25(d).

finds that this matter should be affirmed.

**II. ADMINISTRATIVE DECISION UNDER REVIEW**

Plaintiff filed an application for DIB alleging disability since May 19, 2010, based primarily on left and right knee impairment and a right arm impairment. [Administrative Record ("AR") 56, 155.] Defendant denied his application on initial review and reconsideration, and he was found not disabled by an Administrative Law Judge ("ALJ") in a March 22, 2013 decision. [AR 12-29, 80-85, 87-92.] After the Appeals Counsel denied review, Plaintiff appealed to this Court, which remanded the case for further proceedings – finding error in the ALJ's step four determination that Plaintiff could perform his past relevant work. While the initial case was pending here in District Court, Plaintiff filed a new application for DIB. Plaintiff was informed in a May 31, 2015 letter that the agency found him disabled (in the first case) as of March 24, 2013.

The ALJ held a hearing on the remanded application on February 20, 2013. [AR 572-90.] The ALJ noted that Plaintiff requested a closed period of disability from his initially alleged onset date of May 19, 2010, through March 22, 2013 (i.e., up to the date on which the agency determined he was disabled). The ALJ found him not disabled during the closed period at issue. Plaintiff sought review of the ALJ's second decision, which was denied. The present case before the Court followed.

As relevant here, ALJ's decision under review found that, during the closed period at issue, Plaintiff had the severe impairments of right shoulder impingement and osteoarthritis of the knees. [AR 551.] The ALJ then found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. [AR 552.] The ALJ then found that Plaintiff had the following Residual Functional Capacity ("RFC"):

[A] range of light work as defined in 20 CFR 404.1567(b) and SSR 83-

10 specifically as follows: the claimant can lift and/or carry 20 pounds
occasionally and 10 pounds frequently; he can stand and/or walk for
four hours out of an eight-hour workday; he can sit for six hours out of
an eight-hour workday; is unlimited with respect to pushing and/or
pulling, other than as indicated for lifting and/or carrying; he can
occasionally perform overhead activities with the right upper extremity;
he can occasionally balance, stoop, kneel, or crouch; he cannot crawl;
he must avoid jobs involving dangerous heavy moving machinery and
unprotected heights.

[AR 552.]

The ALJ then determined that Plaintiff could not perform his past relevant work, but considering his age, education, and work experience, that jobs existed in significant numbers in the national economy that Plaintiff could perform given his RFC.

Plaintiff alleges that the ALJ committed error in two respects. First, Plaintiff alleges that the ALJ failed to properly weigh the medical opinions, leading to an improper determination of Plaintiff's RFC. Second, Plaintiff contends that the ALJ improperly discounted Plaintiff's testimony regarding his pain and limitations. [Pl. Br. at 1]. Defendant argues that the ALJ's findings, RFC, and decision were correct.

### III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) (internal citation omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## IV.     DISCUSSION

### A.  The Opinions At Issue

Plaintiff contends that the ALJ erred by failing to properly consider the opinions of (1) treating physician, Dr. Ricardo Di Sarli; (2) evaluating orthopedic surgeon Dr. James Styner; (3) medical expert Dr. Eric Schmitter, and (4) treating physician Dr. Christopher Ninh, an orthopedic surgeon. Plaintiff argues that the opinions of these physicians "require that [Plaintiff] be found disabled during the relevant period," and the that ALJ's finding that Plaintiff can perform a range of light exertional work is "not supported by any evidence." [Pl. Br. at 4.] The Court finds that a remand or reversal on this basis is not warranted. The opinions of each physician and the ALJ's reasoning will be discussed, as necessary, below. As is evident from any reasonable review of the ALJ's opinion, Plaintiff's contention that the ALJ's determination of Plaintiff's RFC is not supported by "any medical evidence" is plainly untrue.

### 1. Federal Law

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009); *see also* 20 C.F.R. § 404.1527. In general, a treating physician's opinion is entitled to more weight than an examining physician's opinion and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).[3]

An ALJ must provide clear and convincing reasons supported by substantial evidence to reject the uncontradicted opinion of a treating or examining physician. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830-31). Where such an opinion is contradicted, however, an ALJ may reject it only by stating specific and legitimate reasons supported by substantial evidence. *Bayliss*, 427 F.3d at 1216; *Trevizo*, 871 F.3d at 675. The ALJ can satisfy this standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick*

---

[3] For claims filed on or after March 27, 2017, the opinions of treating physicians are not given deference over the opinions of non-treating physicians. *See* 20 C.F.R. § 404.1520c (providing that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources"); 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016). Because Plaintiff's claim for DIB was filed before March 27, 2017, the medical evidence is evaluated pursuant to the treating physician rule discussed above. *See* 20 C.F.R. § 404.1527; [Def. Br. at 5 n.5 (citing Social Security Ruling ("SSR") 96-2p).]

*v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (when a treating physician's opinion is not given controlling weight, factors such as the nature, extent, and length of the treatment relationship, the frequency of examinations, the specialization of the physician, and whether the physician's opinion is supported by and consistent with the record should be considered in determining the weight to give the opinion).

### 2. Dr. Di Sarli

Dr. Di Sarli began treating Plaintiff soon after his alleged 2010 onset date. Dr. Sarli completed an undated lower extremities impairment questionnaire and a February 13, 2013 letter for Plaintiff that opined that Plaintiff had severe limitations due to osteoarthritis in the knees. In his February 2013 letter, Dr. Di Sarli concluded that Plaintiff was unable to work. [AR 553, 217, 379, 403.]

The ALJ considered the longitudinal history of Plaintiff's treatment with Dr. Di Sarli. The ALJ noted that Dr. Di Sarli had twice noted that Plaintiff could perform a reduced range of sedentary work, including lifting or carrying up to 20 pounds occasionally and five pounds frequently. Dr. Di Sarli opined that Plaintiff could sit for two hours in an eight-hour workday and walk for one hour in an eight-hour workday. Dr. Sarli precluded Plaintiff from pushing, pulling, bending, stooping, and kneeling. [*Id.*]

The ALJ gave minimal weight to these assessments because they were not supported by the objective evidence in the record, and were, in fact, contradicted by certain of Dr. Sarli's findings and Plaintiff's self-reports. [AR 553.] The ALJ noted that "the doctor marked the examination findings 'within normal limits' for much of the claimant's course of care with him." [AR 553 (citing AR 512-21).] During a November 2010 visit (within the closed period), Plaintiff had only mild signs of swelling and had adequate range of motion up to 120 degrees of both knees with normal knee cap tracking and no crepitation. Plaintiff reported that his knee pain was relieved with Meloxicam when he took it. [AR 554; 318] Thus, as the

Commissioner notes in his brief, while Plaintiff pointed to certain of Dr. Sarli's findings in his favor, he "ignores the other nine treatment records from Dr. Di Sarli following [his Aprill 11] appointment which revealed normal physical examinations." [Dkt. 18 at 10 (citing AR 513-21, 553).]

In giving Dr. Di Sarli's opinion minimal weight, the ALJ also discussed the findings of a consultative orthopedic evaluation performed by Dr. Vincente Bernabe in January 2012. To that point in time – well within the closed period from 2010 to 2013 – Dr. Bernabe found, and the ALJ noted specifically, that Plaintiff reported to him that he was not taking any pain relief medication other than Tylenol, was not pursuing any other treatment for pain relief, and denied ongoing physical therapy or use of knee braces or a cane [AR 554 (citing AR 256).] Dr. Bernabe's report also noted that Plaintiff had normal muscle strength and full range of motion, that "range of motion was painless," and his gait was normal. [*Id.*] Although the ALJ ultimately discounted Dr. Bernabe's opinion that Plaintiff could perform a full range of medium work with no additional restrictions, he did so because the physician's ultimate conclusion overstated Plaintiff's RFC. The ALJ was nevertheless entitled to rely on Dr. Bernabe's objective findings from during the closed period in crafting Plaintiff's RFC and making his ultimate determination that Plaintiff was not disabled.

### 3. Dr. James Styner

Plaintiff was evaluated by Dr. Styner in November 2012. The ALJ properly discounted Dr. Styner's conclusion that Plaintiff was limited to sedentary work for several specific and legitimate reasons. For example, Plaintiff admitted in connection with his evaluation that he was only pursuing conservative care for knee pain, and had not received any treatment for his alleged shoulder, arm, or back pain. [AR 554 (citing AR 357).] Plaintiff had full motor strength and his knees showed no evidence of instability or swelling. [AR 555; AR 360-62.] The ALJ noted that Dr. Styner's November assessment that Plaintiff was limited to sedentary work was

not "supported by the clinical objective evidence at the hearing level, which conveys no significant diagnostic workups or treatment for the claimant's shoulder and back pain." [AR 555.]

Dr. Styner also examined Plaintiff at a follow-up visit in March 2013, the last month of the relevant closed period. In discussing the March follow-up visit, the ALJ noted that Plaintiff reported his right knee was doing well after an injection, and he only had increased left knee pain "after doing a lot of walking while visiting in Mexico." [AR 555 (quoting AR 505).] While acknowledging that Plaintiff had knee pain, the ALJ found that "the objective examination findings and the claimant's reported activities of daily living, including the noted trip to Mexico, despite conservative treatment, suggest that the claimant's symptoms were managed adequately prior to the date he was found disabled by the State Agency. As already noted, the file does not contain workups or treatment for shoulder or back pain, which also renders the range of sedentary work assessed by Dr. Styner (and Dr. Di Sarli) overly restrictive." [AR 55.] The ALJ's thorough and careful review of the medical evidence and Plaintiff's activities of daily living "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings," *Garrison,* 759 F.3d at 1012, satisfies the required standard in this case. Accordingly, the ALJ's rejection of Dr. Styner's ultimate opinion was supported by substantial evidence.

### 4. Dr. Eric Schmitter

The ALJ gave significant but not great weight to the opinion testimony of Dr. Eric Schmitter. [AR 555.] In fact, the vast majority of Dr. Schmitter's testimony supports the ALJ's findings and refutes Plaintiff's claim of complete disability. Dr. Schmitter opined that a light range of work, with reduced standing and walking was appropriate. Plaintiff argues, however, that one particular limitation recommended by Dr. Schmitter – that Plaintiff is limited to standing or walking for no more than two hours in an eight-hour workday, rather than the four-hour limitation found by

8

the ALJ – should have been incorporated into Plaintiff's RFC, which would render him disabled. [Pls. Br. at 11.] The ALJ noted that Dr. Schmitter's assessment of light work was appropriate, but that in light of the other medical evidence (some of which is discussed above, and including Plaintiff's self-reported activities of daily living during the period (the Mexico trip, for example), and his "essentially normal range of motion of the knees and conservative treatment," there was little in the record to support the severe, two-hour limitation to standing and walking. [AR 555-56.] Given that the assessment of an individual's RFC is an issue reserved to the ALJ, the ALJ's evaluation and balancing of the evidence here, including the opinions of Dr. Schmitter, was entirely appropriate. *Chaudhry v. Astrue,* 688 F.3d 661, 671 (9th Cir. 2009) (ALJ need not accept the opinion of treating physician if it is conclusory and inadequately supported by clinical findings); *Hensley v. Colvin,* 600 Fed. Appx. 526, 527 (9th Cir. 2015) (unpublished) (ALJ properly rejected opinion that "was inconsistent with [claimant's] reported daily activities, which included attending to personal care, cooking, cleaning, shopping for groceries, taking the bus and swimming for exercise").

### 5. Dr. Christopher Ninh

Plaintiff correctly points out that the ALJ did not address the opinion of Dr. Christopher Ninh. The Court concludes for multiple reasons, however, that any error was harmless. Dr. Ninh first began treating plaintiff in October 2014, well after the relevant period under review. [AR 911-12.] Then, in 2016, more than three years after the closed period at issue, he issued an unsupported, conclusory opinion that Plaintiff had – **since May 2010, four years before he met Plaintiff, and six years before his opinion was rendered** – "constant pain" (although he noted that Plaintiff only took NSAIDS to treat his pain), could sit for more than six hours, had to elevate his legs (which, notably, is not considered palliative for knee arthrosis, the condition with which he diagnosed Plaintiff), could stand or walk for one hour or less, and would miss less than one day of work a month. [AR 911-13, 915.] Dr.

Ninh did not provide or cite to any objective findings (other than some unspecified "x-ray images") to support his opinions. Moreover, some of Dr. Ninh's conclusions were at odds with Plaintiff's own claims. [AR 155, 914 (Plaintiff does not complain of problems concentrating, while Dr. Ninh opines that Plaintiff's symptoms impede concentration).] Given the opinions of Dr. Bernabe, Dr. Schmitter, and others on whom the ALJ relied,[4] including the objective findings and other medical evidence of record showing mostly unremarkable findings from the relevant period prior to Dr. Ninh's treatment of Plaintiff, the ALJ's failure to specifically address the limitations assessed by Dr. Ninh was harmless. *Molina v. Astrue*, 674 F.3d 1111, 1115 (9th Cir. 2012) (court must "look at the record as a whole to determine whether the error alters the outcome of the case"); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for error that are harmless.").

### B. Plaintiff's Subjective Symptom Testimony

Plaintiff contends that the ALJ failed to provide sufficient reasons for rejecting his testimony regarding his subjective symptoms and functional limitations. [Pl. Br. (Dkt. 13) at 13-16.]

Once a disability claimant produces evidence of an underlying physical or mental impairment that could reasonably be expected to produce the symptoms alleged and there is no affirmative evidence of malingering, the ALJ must offer "specific, clear and convincing reasons" to reject the claimant's testimony about the severity of her symptoms. *Trevizo*, 871 F.3d at 678 (citation omitted); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ must specifically identify the testimony that is being rejected and explain what evidence undermines that

---

[4] The Court notes that Plaintiff's claim that the ALJ's light work RFC is "unsupported by any medical evidence" [Dkt. 13 at 4] is further belied by several additional medical source opinions Plaintiff entirely fails to acknowledge. Two State Agency physicians, Drs. Chan and Phillips, also provided opinions that support the ALJ's findings.

10

testimony. *See Treichler v. Comm'r, Soc. Sec. Admin.*, 775 F.3d 1090, 1102-03 (9th Cir. 2014); *Reddick*, 157 F.3d at 722; *see also Trevizo*, 871 F.3d at 679, n.5 (clarifying that "assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of a claimant's symptoms . . .' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness") (quoting SSR 16-3p).

Plaintiff testified, among other things, that he could only walk for 10 to 15 minutes at a time, has throbbing pain in his right shoulder and numbness in his hands, can only stand in place for 3 to 5 minutes, and is in pain when he sits for 10 to 20 minutes. [AR 48-49 (from transcript of February 20, 2013 hearing).]

The ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause some of Plaintiff's alleged symptoms, Plaintiff's allegations concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent alleged. [AR 552.] The Court concludes that the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. *See Trevizo*, 871 F.3d at 678; *Smolen*, 80 F.3d at 1284.

The ALJ stated that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms were not consistent with the medical and other evidence "for the reasons explained in this decision." [AR 552.] These reasons were several.

As an initial matter, as discussed above and detailed further in the ALJ's opinion, many of Plaintiff's treatment records for the period in question reflected unremarkable physical examinations. While medical evidence alone is not a basis for rejecting pain testimony, it is one factor that the ALJ is permitted to consider. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ specifically relied on inconsistencies between a claim of total disability and Plaintiff's self-reported activities of daily living as an additional reason for discounting Plaintiff's testimony. [AR 553.] The ALJ noted that Plaintiff's Exertional Activities Questionnaire from November 21, 2011, during the closed period, indicated that he could walk for no more than thirty minutes, climb about 10 steps with difficulty, and lift light items such as a chair. [*Id.*] He also indicated that he could do some household chores including sweeping, doing dishes, dusting and mopping with breaks between chores. He could drive a car and mow the lawn with an electric mower. He reported at that time that he was using prednisone and Tylenol for pain control. [*Id.*] The ALJ reasonably found that these self-reported activities of daily living were consistent with the ability to do light work as defined in Plaintiff's RFC, rather than with the extreme limitations to which he testified. [*Id.*] This reason, alone, meets the clear and convincing standard required to support the ALJ's decision.

While unnecessary, the ALJ provided additional specific reasons to reject Plaintiff's testimony of extreme limitations. For example, the ALJ also reasoned that Plaintiff's self-reports to medical professionals were inconsistent with disabling pain. [*E.g.*, AR 555 (Plaintiff only had serious knee pain after walking for extended periods during a trip to Mexico; this self-report was in 2013, late in the closed period. Given that Plaintiff's condition was degenerative, lack of disabling pain late in the closed period is a good indication that Plaintiff's impairment was even less earlier on).] The inconsistency in Plaintiff's statements was another specific, clear and convincing reason on which the ALJ could properly rely in rejecting Plaintiff's subjective symptom testimony. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (ALJ may use "ordinary techniques of credibility evaluation," such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony); *Smolen*, 80 F.3d at 1284 (ALJ may consider "prior inconsistent statements concerning the symptoms, and other testimony by the

claimant that appears less than candid"); *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may properly rely on inconsistencies in the claimant's testimony).

Plaintiff's conservative treatment was also inconsistent with the level of pain and disability to which Plaintiff testified at the hearings before the ALJ. An ALJ may properly rely on the fact that only routine or conservative treatment has been prescribed. *See Johnson*, 60 F.3d at 1434; *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (finding that plaintiff's claim that she experienced pain "approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received"). Thus, Plaintiff's relatively routine and conservative treatment was a specific, clear and convincing reason to discount Plaintiff's subjective symptom testimony.

Accordingly, reversal is not warranted based on the ALJ's consideration of Plaintiff's testimony regarding the nature and severity of his symptoms.

## V. CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS SO ORDERED.**

DATED: August 09, 2019

GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

13